Hon. HOYT H. WHEELER,
Hon. TIMOTHY P. REDFIELD, } Assistant Judges.
Hon. JONATHAN ROSS,

---

## TOWN OF CAVENDISH *v.* TOWN OF MT. HOLLY.

*Pauper. Settlement.*

If a town renders aid to a person in discharge of a duty that the town has assumed by way of contract, and not in discharge of a duty imposed by statute, such aid will not prevent the person from acquiring a settlement in such town.

This was an appeal from an order of removal of one Lucy Rhodes, a pauper, from the town of Cavendish to the town of Mt. Holly. Plea, that the pauper's last legal settlement was not in Mt. Holly. Trial by jury, December Term, 1875, BARRETT, J., presiding.

Upon the trial the following facts were conceded to be true by both parties. The pauper was the daughter of James Rhodes

and Abigail Rhodes.   Loren Horton was the son and Abigail
Rhodes was the daughter of Asa Horton and Abial Horton, and
Asa Horton was the son of Adonijah Horton.   James Rhodes's
father acquired a settlement in the town of Plymouth before
the said James became of age, and the said James acquired
a settlement in Plymouth by derivation before he moved into
Mt. Holly.   The said James, being over twenty-one years of
age, moved into the town of Mt. Holly in the year 1834.   In
March, 1838, the said James and Abigail Horton were married,
and in the year 1839 they moved on to the Horton farm, so called,
in Mt. Holly.   Said farm was conveyed to the selectmen and
overseers of the poor of Mt. Holly, in their said capacities, by
the said Adonijah Horton, on April 14, 1835 ; and on the same
day they, in their said capacities, executed a bond to the said
Adonijah in the penal sum of $1000, which recited the exe-
cution of the deed of said farm to them as aforesaid, and that
the widow Abial Horton then lived thereon, and that said con-
veyance was "for the use and benefit of said town, to enable
said town to support and maintain the said widow Abial Horton
and the children of Asa Horton, late of Mt. Holly, so that said
Adonijah Horton shall not hereafter be liable to or for the main-
tenance and support of said widow and children of said Asa Hor-
ton, deceased," and was conditioned to become void if said town
of Mt. Holly furnished such support and maintenance, and indem-
nified and saved harmless the said Adonijah from all liability, ex-
penses, charges, and costs that might ever thereafter accrue to
him on account of said widow and children.   The said James
and his wife continued to live on said farm until October, 1866,
when they moved to Plymouth, and subsequently to Cavendish.
The said Abial Horton, Loren Horton, James Rhodes, and his
said wife Abigail, all lived together as one family in one house on
said farm, and cultivated and carried on said farm, until Loren
and his mother went to live in a shanty that he had built on said
farm.   The year in which said shanty was built did not distinctly
appear, but there was evidence that it was standing in 1855, and
then occupied by Loren and his mother, and no evidence that it
was standing at any earlier date.   After this shanty was built,

said James and his wife continued to live in said house, and said Abial and Loren in said shanty, and said farm was in some way divided between the two families for their separate use, but by whom said division was made did not appear. There was no direct evidence as to the terms and conditions under which said James lived upon and carried on said farm, only that he never paid any rent therefor. They continued to live in this way until about the year 1860, when said Loren moved to Clarendon, and said Abial went to live with one Hammond, in Mt. Holly, where she lived one year, and then went to live in the family of said James, and continued to live with said James up to the time of her death.

The defendant introduced the deposition of Dr. Crowley, who testified that he had known the said James since 1834 ; that his mental capacity was considerably below par, his business capacity small and limited, and his physical capacity weak, and that he could not do more than half a man's work ; that he was a basket-maker, cobbled some for his family, and bottomed chairs, and that he never knew of his having any property without it was a few baskets ; that deponent was selectman of Mt. Holly in 1839 and 1840, during which time said James lived on said farm ; that said farm, while said James lived thereon, was called the town's property ; that he never knew of said James paying the town any rent while he lived on said farm, and did not think he did, nor that the town expected him to pay rent ; that the reason said James was suffered to live on said farm was, as deponent supposed, because his wife had been chargeable to the town, and that the farm was deeded to the town on that account ; that all deponent knew about her being chargeable to the town was, that the town paid deponent's bills for doctoring her in 1835, 1836, and 1837, before she was married, and that he attended upon her after she was married.

Defendant also gave in evidence the grand lists of said town from the years 1842 to 1866 inclusive, showing that said James's poll nor list was not taken during those years, except the year 1863, when his poll was listed ; and proved that the grand lists for the years previous to 1842 were lost. Defendant also introduced testimony tending to show, that as early as 1845 there was

upon said farm and in the possession of the said James, and belonging to the town of Mt. Holly, a yoke of oxen that said James used, and never paid anything for the use thereof; that from that year, continually, up to about the time said James left Mt. Holly, the town furnished him a yoke of oxen to work, for the use of which he never paid anything; that from about 1845, to about 1853, from time to time, articles of provision were furnished to said James by the overseer, but whether upon his application or not did not appear; that after and including 1853, the town furnished said James and his family with some necessaries for family support, in small amounts, almost every year, and upon his application. Defendant introduced the records of town meetings of the town of Mt. Holly, showing that the town, as early as 1835 or 1836, voted to repair the house on said farm; also, testimony tending to show that said town had no other farm but this one, until 1861 or 1862. There was evidence that it had during all that period several town paupers. It appeared that nobody but said James and the Hortons lived or were kept on said farm during that period. The plaintiff gave evidence tending to show that the pauper resided nine years in Mt. Holly after becoming eighteen years of age, without becoming chargeable to any town.

After the evidence was closed, plaintiff's counsel claimed to the jury, that by residence from 1834 for more than seven years, without becoming chargeable, the said James gained a settlement in Mt. Holly; that his residence on the farm was not a being chargeable, and that there was no evidence of anything furnished him by the town till 1845, when the yoke of oxen were furnished as shown by the evidence, but not for the reason that he was chargeable; that in connection with the deed and the bond of the town in 1835, the evidence showed that his being on the farm was not by way of help and support as being chargeable, but in the service of the town in fulfillment of the obligation of said bond; that said Lucy was 18 years of age in 1857, and that her home was in her father's family in Mt Holly for nine years thereafter, till 1866, when he removed from said town, and that she was not chargeable to any town during that period, and thereby gained a settlement in her own right.

Defendant's counsel, without making any question to the jury, claimed to the court, that the occupancy of the said farm by said James from the time he went on to it as shown by the evidence, prevented his gaining a settlement in said town.   The court replied that it could not rule as matter of law that said occupancy, under the circumstances developed by the evidence, constituted a becoming chargeable within the 8th division of s. 1, c. 19, Gen. Sts.   Counsel answered, that unless the court should so rule, nothing was to be gained by going to the jury, as said James would have resided in Mt. Holly more than seven years before he became chargeable by anything else being done for his support by the town, and the pauper would derive settlement in said town from him ; and a verdict was taken for plaintiff by consent, the defendant excepting to the refusal of the court to hold and rule as claimed.

*Walker & Goddard* and *W. E. Johnson,* for defendant.

The question as to whether the pauper acquired a settlement in her own right after she became of age, is not involved in the case.   The sole question is, did the court below err in refusing to hold that the living on the Horton farm by James Rhodes, under the circumstances, prevented the said James from gaining a settlement under the 8th division of s. 1 c. 19, Gen. Sts.   We insist there was error.   Under that section, whenever a given state of facts is conceded, clearly proved, or admitted to exist, it is for the court to say, as matter of law, whether, under such facts, the pauper has gained a settlement or not.   Such has always been the practice in this state.   *Newbury* v. *Topsham,* 7 Vt. 407.   We insist that the living on the farm by Rhodes, under the circumstances, was being chargeable; and that while being there, he could not be said to have maintained himself and family.

*Gilbert A. Davis* and *J. F. Deane,* for plaintiff.

The refusal of the court to rule as requested, was correct. Rhodes had sufficient mental capacity to have a choice and desire as to his place of residence.   *Ludlow* v. *Landgrove,* 42 Vt. 137. He had a settlement in Plymouth, was of full age when he went

67

to Mt. Holly in 1834, and had resided in Mt. Holly more than seven years prior to 1845, and maintained himself and family, and had not become chargeable, and thereby had gained a settlement in Mt. Holly. Gen. Sts. c. 19, s. 1. That he was chargeable, was not to be presumed, but proved as a fact, and the *onus probandi* was on Mt. Holly. 7 Vt. 407 ; 10 Vt. 22 ; 12 Vt. 250 ; *Tunbridge* v. *Norwich*, 17 Vt. 493 ; *Pawlet* v. *Sandgate*, 17 Vt. 622. Chargeable to the town, means expensive, costly to the town. This could not occur until the Horton farm had been absorbed by expenses. The town must have been out of pocket. *Motnpelier* v. *Calais*, 5 Vt. 571 ; *Lebanon* v. *Hebron*, 6 Conn. 45. They all lived together as one family on said farm up to 1855, and so long as they supported themselves upon said farm or elsewhere in Mt. Holly, they cannot be said to be chargeable to that town. There was no proof that Rhodes never agreed to pay rent, or that he was never expected to pay rent; and whether he was legally chargeable, would depend on his degree of destitution and poverty—a matter of fact. *Hartford* v. *Hartland*, 19 Vt. 392.

The opinion of the court was delivered by

REDFIELD, J. The verdict and judgment below were that the pauper, Lucy Rhodes, was *duly removed*, and error is claimed by the defendant, in the trial and judgment. The case concedes that James Rhodes had a legal settlement in the town of Plymouth in 1834, when he removed to the town of Mt. Holly, and continued to reside in said town until about the year 1866. In March, 1838, he married Abigail Horton. In the year 1839, they moved on to the Horton farm, so called, and continued to reside there until October, 1866, when they removed to Plymouth, and thence to Cavendish. Abial Horton and Loren Horton (the mother and brother of the said Abigail) lived with the said Rhodes and wife, and carried on said farm together, until about the year 1855, when Loren and his mother built a shanty, and thereafter occupied the same, on said farm, and cultivated separate portions of the farm. That after the year 1845, the said James Rhodes had the use of a yoke of oxen on said farm, which belonged to the defendant town ; and from 1845 to 1853, the town furnished said

James and family some necessaries for their support. The said James paid nothing for the use of said farm or of the oxen. There was no evidence of any contract or understanding showing the relation between said Rhodes and said town.

The deposition of Dr. Crowley shows that he had charges for attending upon Abigail Horton in 1835, 1836, and 1837, before her marriage to Rhodes, which charges were paid by the town. The reason given by Dr. Crowley for the town's assuming and paying for the support of Abigail Horton, and allowing her and husband to occupy the farm owned by the town, without rent, was, the fact that Adonijah Horton had conveyed this farm to the town in consideration that the town assumed to render such support. It appears that said farm was conveyed to said town on the 14th of April, 1835 ; and on the same day the selectmen and overseer of the poor of said town gave their bond in behalf of the town, in the penal sum of one thousand dollars, reciting in said bond that the farm was conveyed " to enable said town to support and maintain the said widow Abial Horton, and the children of Asa Horton, late of Mt. Holly, so that the said Adonijah shall not hereafter be liable," &c. The bond recites that said widow Abial Horton then resided with her children on said farm. Upon this evidence the defendant's counsel claimed that the said James became so " chargeable " to. the defendant town as to prevent the gaining a settlement therein. The court refused so to rule *as a matter of law*, and defendant declined to go to the jury on the evidence.

The only aid furnished by the town to Rhodes during the first seven years of his residence in said town, was the permission to reside upon and use the farm without paying rent. Abial Horton and her children occupied said farm at the time it was conveyed to the town. Rhodes married the daughter and dwelt with the family. The town had assumed the burden of supporting the mother and children ; whether Rhodes enhanced or relieved this burden, we have no knowledge ; but the natural inference from the fact that he was permitted to occupy the farm without rent, and that for a part of the time the town furnished him a yoke of oxen and required no account for their use, would seem to be, that such was the cheaper and better way to support the widow

and family. If this aid was rendered in the discharge of a duty the town had assumed in consideration of the *farm*, then it was not furnished in the discharge of a duty imposed by the statute, and would not interrupt the accruing settlement of James Rhodes. There was, therefore, no error in denying the defendant's request. Judgment affirmed.